# WILLIAM A. STERLING

## *vs.*

# THE MARINE BANK OF CRISFIELD, a Corporation.

*Attachment: illegal seizure of goods; damages; loss of profits; injury to credit; evidence.*

From the refusal of a trial Court to allow a declaration to be amended an appeal will lie.                          p. 398

In an action for damages for certain goods, consisting of tobacco, candy and soft drinks, taken under an illegal attachment, and for the destruction or interruption of the plaintiff's business, evidence of the profits of a pool room operated in connection with the plaintiff's store was not admissible, since the pool tables and their appurtenances had not been taken by the sheriff, and since the plaintiff testified he carried on business with the pool tables after the attachment.

p. 398

Nor was evidence admissible to show from whom the plaintiff purchased the stock of goods, as the value of such goods had been already conceded.                          p. 399

Damages for the loss of profits and the breaking up of a business by an illegal attachment, etc., may be recovered only when the business was an established one and conducted long enough for the profits to be capable of being estimated with reasonable certainty.                          p. 401

Damages for loss of credit in such a case is in general too uncertain and speculative a matter to be left to the jury.          p. 402

*Decided April 10th, 1913.*

Appeal from the Circuit Court for Dorchester County (JONES, J.), whence the case had been removed from Somerset County.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

The facts are stated in the opinion of the Court.

*William L. Rawls* and *Wm. L. Marbury* (with whom were *Thomas S. Hodson* and *Goldsborough & Fletcher,* on the brief), for the appellants.

*Alonzo Miles* (with whom were *Miles & Meyers* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The questions involved in this proceeding are comprehended within a very narrow compass. The appellant, Sterling, sued the Marine Bank of Crisfield for damages resulting from an attachment which the bank had caused to be issued and under which the stock of tobacco, candies and soft drinks of the plaintiff had been taken. The bond given at the time of the issuance of the attachment was not a proper one, and the attachment was, on motion, quashed. The claim of the plaintiff is for damages to the goods thus wrongfully taken, and for the destruction of or interruption to his business. The declaration does not allege any malice upon the part of the bank, or make any claim for punitive damages, and the chief question in the case is as to what is the proper measure of damages in the case of this character.

The 37th bill of exception was reserved to the action of the trial Court in overruling a motion of the plaintiff to amend his declaration by interlineation; the motion being made after all of the testimony for both plaintiff and defendant had been offered. Exactly why this motion of the plaintiff should have been overruled is not clear in view of the very liberal provision for amendment provided by the statute (Code 1912, Art. 75, sec. 35). Nor can the rule laid down in *Scarlett* v. *The Academy of Music,* 43 Md. 208, that "the allowance of an amendment, provided it be within the power of the Court granting the leave to make it, is not the subject of an exception nor of review by this Court" be invoked in this case, as here the action of the Court was not allowing an amendment, but refusing to allow one. The amendment proposed, was of itself entirely proper, and while the declaration might have been sufficient without it, it was certainly improved if the amendment as offered was made, and it was error to have refused to permit it. This ruling, however, was not of so serious a nature that if it constituted the sole error in the case it would require a reversal of the judgment, but inasmuch as the judgment must be reversed upon other grounds, it is proper to express the view of this Court upon this exception.

The remaining thirty-six exceptions were all reserved to offers of testimony, and since most of them deal with one aspect or another of the proper measure of damages, it will be proper to state what the rule is, and then group the various exceptions accordingly. The fourth exception was to the refusal of the trial Court to permit the plaintiff to answer the question as to the profits derived by him from the conduct of his pool room, run in connection with the store; this ruling of the Court was entirely correct, since the pool tables and their appurtenances were not taken or removed by the sheriff in the execution of the attachment, and the plaintiff testified that after the levy of the attachment he still carried on some business on his pool tables.

In the third exception, the Court has refused to permit the plaintiff to answer the same question as put to him in the question to which the 4th exception is reserved, adding to it the profits received or derived by him from his store, as well as his pool room. This ruling likewise was proper, for the reason already given, and the further reason that the question as put to the witness did not require or ask him to distinguish the profits derived from the store from those derived from the pool room.

The thirteenth exception was to the refusal of the trial Court to permit the witness to state the persons from whom he purchased his stock. That was manifestly an immaterial inquiry, so far as any issue in the case was involved, and the refusal of the Court to permit the witness to answer was proper.

It is practically conceded in this case that the value of the goods taken by the sheriff under the writ of attachment sued out by the bank, was $250, and by its several rulings the Court below limited the plaintiff in his recovery to the actual value of the goods, it being in evidence that the goods taken had, by the time that the attachment was quashed, become so damaged as to be of little or no value. The appellee contends that this is the true measure of the liability of the bank, while on behalf of the appellant the position asserted is that he is entitled not merely to the value of the goods, but also to recover for the destruction of, or interruption to his business, and also for the loss of credit which is claimed to have resulted from the levy of the attachment; or to state it in a different way, what is the proper measure of damage which a party can recover, whose goods have been taken and whose business has been broken up or interrupted by the levy of an invalid attachment? The appellee relies for his position upon that class of cases where there has been a conversion by one party of the goods of another, and in which the rule of damage is well established to be the value of the goods at the time of the taking, together with interest from that

date down to the time of trial. These cases, however, which arise out of conversion of the goods of a party, do not take into account at all the loss which may be occasioned by the breaking up or interruption of business, a loss generally determined by the profits of the business, therefore the cases of conversion or of trespass *de bonis asportatis* do not necessarily furnish a rule for cases where there is this additional element of injury. There is another class of cases growing out of negligence, in which, where property has been injured and a business broken up, the party damaged is allowed to recover not merely for the actual physical injury done to his property, but his loss of profits as well, during the period his business is interfered with. In the case of *Rawlings* v. *Nash,* 117 Md. 400, it is said, "There is a class of cases in which evidence of profits usually earned has been admitted as the basis of recovery for the destruction or interruption of an established business. It has been held by this Court that the loss of such profits is a proper measure of damages in cases where the stock in trade of a store was wrongfully taken in execution (*Strasburger* v. *Barber,* 38 Md. 103). * * * The suit was for an interference with an entire and established business which the plaintiff had the right to carry on indefinitely and which had been conducted for such a length of time as to make possible the ascertainment of its profits with reasonable certainty." The same rule was followed in the case of *Moore* v. *Schultz,* 31 Md. 420, where goods had been seized under an attachment which was subsequently quashed, and the goods were returned greatly deteriorated in value. In this case the jury was said to have been properly instructed that the breaking up of the business was a special damage for which the plaintiff was entitled to recover, and in *Corner* v. *McIntosh,* 48 Md. 383, where an attachment on judgment had been levied upon a farm, certain goods, chattels, gathered crops and implements, the late JUDGE ALVEY enforced substantially the same rule, and it is again repeated in *Medairy* v. *McAllister,* 97 Md. 497. If we turn to other

States, while there is some difference of decision we find the rule adopted here well supported by authority elsewhere. The limitation, and apparently the only limitation which has been placed upon it in this State, is that expressed in the *Winslow Elevator Co.* v. *Hoffman,* 107 Md. 637, where it is said, that "it is well settled that before a recovery can be had on this ground it must appear that the business which is claimed to have been injured was an established one, and that it had been conducted successfully for such a length of time that the profits thereof could be ascertained with reasonable certainty."

When we come to deal with the question of loss of credit as a proper element of damage in such a suit, there is a diversity in the decisions, IV *Cyc.* 879. In a number of the States it is held that damages of this character are too remote and speculative in their nature, and any award upon this basis is merely the result of conjecture upon the part of the jury for which there can be no adequate basis. So the United States Circuit Court of Appeals in *Bucki* v. *The Fidelity and Deposit Co.,* 109 Fed. 393, excluded from the consideration of the jury the element of injury to credit, as being purely collateral or consequential, and the case of the *Seattle Crockery Co.* v. *Haley,* 6 Wash. 302, enumerates the several elements of damages recoverable in an action on an attachment bond, where the attachment had failed, and includes the actual depreciation of the value of the goods seized, and the ascertainable profits of the business while the property was in the possession of the Marshal, but excludes any element of damage to credit. In *Alexander* v. *Jacoby,* 23 Ohio St. 358, which was also an action for damages for the wrongful seizure of goods under an attachment, it was held that the plaintiff could recover for the natural and necessary losses occasioned by an interruption to the owners business, but no question of the impairment of credit was submitted to the jury, and in *McCausey* v. *Hoek,* 159 Mich. 570, where there had been a wrongful levy of an execution and a suit

brought to recover damages therefor, recovery was allowed for the value of the goods taken and the loss of profits during the period that the place was closed up, this last element being spoken of as a loss by interruption to business.

From a consideration of the cases enumerated and others, it follows that in a case of this character there were two elements of damage proper to be considered and passed upon by the jury: (1) the value of or damage to the goods actually seized, and (2) the actual ascertainable loss of profit consequent upon the interruption to the business of the plaintiff; but that the damage to the credit, if any, of the plaintiff is too uncertain and speculative a matter to be left to the jury.

From what has been said it follows that the trial Court was in error in its rulings upon the evidence as set forth in the first, second, fifth, sixth, seventh, eighth, ninth, tenth. eleventh, nineteenth, twentieth, twenty-first, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third and thirty-fourth exceptions, and for these errors the judgment below must be reversed, but that the Court was correct in its rulings upon the evidence contained in the twelfth, fourteenth, fifteenth, sixteenth, eighteenth, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, thirty-fifth and thirty-sixth bills of exception.

*Judgment reversed and cause remanded for a new trial, costs to be paid by the appellee.*